UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**OPE ADENIKINJU,** *individually and on behalf of all similarly situated consumers*,

    **Plaintiff,**

v.

**EXPERIAN INFORMATION SOLUTIONS, INC.,**

    **Defendant.**

Civil Action No. __3:24cv259__

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Ope Adenikinju, individually and on behalf of all similarly situated consumers, by Counsel, and for her Complaint against Defendant Experian Information Solutions, Inc., alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual consumer, Ope Adenikinju ("Plaintiff"), against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") for several violations of Plaintiff's civil rights under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x (the "FCRA").

2. This case revists and seeks to complete the litigation of extend the relief and result in *James et al v. Experian Information Solutions, Inc*. 3:12-cv-00902-REP, which sought to address the same issues against the same Defendant.

3. Accuracy of information and transparency are core goals of the FCRA since Congress enacted it in 1970. Key to Congress's aspirations is the ability of consumers to dispute

inaccurate information and have those inaccuracies corrected. The FCRA makes this right absolute, demanding that consumer reporting agencies ("CRAs") like Defendant investigate a consumer's claim that "any item" of information is incomplete or incorrect. 15 U.S.C. § 1681i(a).

4. Importantly, nothing in the FCRA allows a CRA to delay or interrupt its investigation of a dispute once received. *Id.* Indeed, the Act provides for the opposite—requiring CRAs to, for example, forward the dispute to anyone who furnished to the CRA information relative to the dispute within five business days of receiving the dispute. 15 U.S.C. § 1681i(a)(2)(A).

5. In the Summer of 2023, Plaintiff discovered that Defendant had mixed her twin brother's credit file with her credit file and labeled Plaintiff's brother's debts and credit inquiries as Plaintiff's. Defendant did this despite the fact that Plaintiff and her brother have different first names, middle names, Social Security numbers, and address histories.

6. When Plaintiff discovered Defendant's error, she disputed the inaccurate information with Defendant. Nevertheless, despite multiple disputes that gave Defendant enough information to identify and correct the problem, Defendant has not removed Plaintiff's brother's information from her credit reports.

7. Defendant ran afoul of the FCRA's investigation requirements by demanding that Plaintiff provide multiple, needless forms of identification before it would even begin to investigate her disputes of inaccurate information.

8. Nothing in the FCRA permits or justifies Defendant's creation of roadblocks to the processing of disputes, yet Defendant repeatedly and unjustifiably requires consumers to provide additional evidence of their identity before it will begin an investigation.

9. And there is, of course, a difference between what Defendant needs to investigate a dispute and Defendant's supposed need to ensure it is turning the results over to the correct consumer.

10. So, while Plaintiff expects that Defendant will defend the class aspect of this case by claiming a need to be sure it is giving the dispute results to the right person, it can still begin investigating the dispute right away using the information the consumer provides. And, if Defendant has doubts about the consumer's identity when the investigation is completed, it can ask the consumer for verification then.

11. Plaintiff brings nationwide class claims against Defendant for failing to investigate her disputes and, instead, requiring that she provide document after document confirming her identity to Defendant's satisfaction.

12. As alleged herein, Defendant will sell a report about Plaintiff to someone who provides substantially less information than Plaintiff did with her disputes.

13. Plaintiff also brings individual claims against Defendant for its continued reporting of inaccurate information about Plaintiff and for its failure to reasonably investigate her disputes.

**JURISDICTION AND VENUE**

14. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

15. Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, the Plaintiff resides here, and Defendant transacts business within this District and Division.

**PARTIES**

3

16. Plaintiff is a natural person who resides in Richmond, Virginia. She is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

17. Experian is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(u).

## GENERAL FACTUAL BACKGROUND

### *Defendant and the "Mixed File"*

18. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate reporting. To that end, the FCRA requires that credit reporting agencies such Defendant, in preparing a consumer report, must "follow reasonable procedures to assure maximum possible accuracy of the information" in the report. 15 U.S.C. § 1681e(b).

19. The FCRA also affords consumers the critical right to dispute inaccurate or incomplete information in their consumer reports. The FCRA requires that upon receiving notice from a consumer that the consumer disputes the accuracy or completeness of any item of information in the consumer's file, Defendant follows specific requirements, including the requirements to:

   a. conduct a reasonable reinvestigation of the disputed information to determine if the information is accurate;

   b. notify the source of the information of the dispute within five days;

   c. provide the source with all relevant information received from the consumer;

   d. review and consider all relevant information provided by the consumer in conducting the reinvestigation;

   e. delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified;

4

  f. complete the reinvestigation within 30 days; and

  g. send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation.

15 U.S.C. § 1681i(a).

  20. Defendant's policies and procedures do not ensure compliance with these provisions of the FCRA.

  21. A major problem with Defendant's procedures is the "mixed file." A mixed file occurs when Defendant places information belonging to one consumer into the file or credit report of a different consumer. In some cases, the two consumers are merged together so there is one file for both consumers.

  22. Defendant's procedures for matching consumer information to a consumer file regularly result in the mixing of one consumer with another.

  23. Mixed files create a false description of a consumer's credit history. Further, mixed files often harm the consumer's ability to obtain credit or other participate our economy.

  24. Consumers with mixed files often have their confidential personal and financial information wrongfully disclosed when the other consumer is seeking credit, and the consumer's confidential information is disclosed to the other person. This violates the consumer's privacy and also greatly increases their risk of identity theft.

  25. Mixed files are not a new phenomenon. Defendant has been aware of mixed files for more than 35 years. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

26. Defendant creates mixed files despite the fact that every consumer has unique personal identifying information, such as a Social Security number. That is so because Defendant's matching logic allows information to be included in a consumer's file even when the Social Security number reported with the information is different than the Social Security number on the consumer's file.

27. Mixed files are a common problem among siblings who share similar names, and Defendant has been sued numerous times for mixing the credit files of siblings.

28. Yet, Defendant continues to operate as though siblings or twins do not exist. Like here, Defendant fails to incorporate into its matching procedures filters that will match things like middle name or initial where available, address history, and gender—things that will otherwise verify that Social Security numbers that are one digit different from one another belong to two different consumers rather than the same consumer.

29. Defendant knows its matching procedures are causing inaccurate credit reports and mixed files.

30. In the 1990's, the Attorneys General of a number of states filed a lawsuit against Defendant because of its failure to comply with the FCRA, including Defendant's mixing of consumers' files.

31. In 1992, Defendant signed an Agreement of Assurances with the State Attorneys General, agreeing to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

32. In 1995, Defendant signed a Consent Order with the FTC.

33. In 2015 Defendant again entered into an "Assurance of Voluntary Compliance" with thirty-one state Attorneys General, wherein it agreed to implement procedures designed to correct the ongoing mixed-file problem.

34. Defendant continues to repeatedly mix consumers' files despite its agreements with the FTC and state Attorneys General, and hundreds of lawsuits filed against it by consumers whose files have been mixed.

35. Over the last ten years, Defendant has been sued hundreds of times by consumers whose files were mixed with a different consumer. A significant number of these lawsuits have involved Defendant mixing the credit information of siblings who share some similar personal identifying information.

36. Despite federal law, Congressional mandates, federal and state government enforcement actions, and hundreds of consumer lawsuits, Defendant's mixed files remain a significant problem for consumers, including Plaintiff.

37. Defendant's sale of consumers' most private and sensitive personal and financial information results in billions of dollars in revenue to Defendant annually.

38. Plaintiff is among the victims of Defendant's mixed files. Defendant mixed Plaintiff's credit and personal information with information belonging to her brother, although they have different first names, middle names, Social Security numbers, genders, and addresses. As a result, Defendant prepared and sold numerous credit reports that included both Plaintiff's and her brother's information.

39. This lawsuit involves a CRA that (1) did not follow reasonable procedures to assure the maximum possible accuracy of the information it reported about Plaintiff, and (2) failed to comply with the FCRA's requirements in their handling of Plaintiff's disputes.

40. Defendant failed to reasonably investigate on a classwide basis, as set forth below.

41. This lawsuit seeks actual, statutory, and punitive damages, as well as costs of suit and attorneys' fees, resulting from Defendant's failure to comply with the FCRA.

*Plaintiff's Experience with Defendant*

42. In or around May 2023, Plaintiff discovered that Defendant was including her brother's accounts, inquiries, and other information on her credit report.

43. In June 2023, Plaintiff called Defendant's customer service number and disputed her brother's accounts and information reporting in her credit report.

44. Defendant's customer service representative told Plaintiff that Defendant would fix her file and remove her brother's information.

45. Defendant, however, did not correct Plaintiff's credit filing following this dispute.

46. In August 2023, Plaintiff sent Defendant a letter stating:

My name is Opeoluwa Taiwo Adenikinju. My SSN is [xxx-xx-xxxx]. Copies of my driver's license and ssn card are enclosed. Experian is reporting my brother's information on my credit file. His name is Oreoluw Kehinde Adenikinju. We are twins and share the same date of birth. His SSN ends in [xxxx] and mine ends in [xxxx].

I have previously notified Experian of these problems, and believed that the issue had been fixed. But my brother's auto loan with Hyundai Capital is now appearing on my Experian credit file. Please remove Hyundai Finance Account Number [xxxx…] from my Experian credit file, as well as any other information associated with my brother's ssn.

47. Defendant received Plaintiff's dispute letter.

48. Defendant did not investigate Plaintiff's dispute.

49. Instead, on August 11, 2023, Defendant sent Plaintiff a form letter pursuant to Section 1681i(a)(3) of the FCRA stating that it was refusing to investigate her dispute "based on the limited information regarding your dispute." Defendant's template letter further explained that

if Plaintiff wanted to submit a dispute to "please provide specific information. Be sure to indicate the specific item you are disputing and explain why you believe the information is inaccurate, for example: "not mine," "paid in full," "never late," "included in bankruptcy," "incorrect name," etc."

50. Defendant's form letter made no sense. Plaintiff's letter was specific, it clearly identified what she was disputing, and it explained why the information was inaccurate.

51. Likewise, Defendant's proposed list of canned dispute phrases do not fit Plaintiff's problem in any way.

52. Defendant uses phrases like these in its online dispute portal because they streamline Defendant's mostly automated dispute investigation process. It is simpler for the overseas agents who "investigate" consumers' dispute to place "not mine" into a form dispute to send to one of Defendant's furnisher clients than it is for that person to understand the specifics of a consumer's disputes from the words the consumer chooses in their dispute letter.

53. Section 1681i(a)(3) of the FCRA permits a CRA to refuse to reinvestigate a consumer's dispute if the CRA "reasonably determines" a dispute is frivolous or irrelevant, including a consumer's failure to provide sufficient information to investigate the disputed information.

54. A CRA may not refuse to reinvestigate a consumer's dispute on the grounds that it is frivolous "unless it is clearly 'beyond credulity' or made in bad faith." *In re Equifax, Inc.*, 96 F.T.C. 1045 (F.T.C. 1909), *rev'd in part on other grounds*, 678 F.2d 1047 (11th Cir. 1982).

55. Defendant did not reasonably determine that Plaintiff's dispute lacked sufficient specificity such that it was determined to be frivolous or irrelevant.

56. Plaintiff's dispute specifically identified who she was and included documentation supporting her identity.

9

57. Plaintiff's dispute specifically explained the problem she was disputing: that Defendant was reporting her brother's account on her credit report.

58. Plaintiff's dispute identified specifically which account belonged to her brother and should not be on her credit report.

59. Yet, Defendant would not investigate Plaintiff's dispute, demanding more information instead.

60. Defendant violated Section 1681i(a) when it refused to reinvestigate Plaintiff's dispute.

61. This same issue was resolved on behalf of a national class as to a different consumer reporting agency in a case for which this Court denied summary judgment and certified a national class on the same basis alleged here. *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007).

62. In fact, Defendant has also already litigated this issue in this Court and ultimately had to settle on a class basis. *James et al v. Experian Information Solutions, Inc*. 3:12-cv-00902-REP. It has learned very little.

63. In response to Defendant refusing to reinvestigate her dispute Plaintiff sent a second dispute letter:

> My name is Opeoluwa Taiwo Adenikinju. My SSN is [xxx-xx-xxxx]. Copies of my driver's license and ssn card are enclosed. Experian is reporting my brother's information on my credit file. His name is Oreoluwa Kehinde Adenikinju. We are twins and share the same date of birth. His SSN ends in [xxxx] and mine ends in [xxxx].
>
> I sent my most recent dispute in early August, and received a response from Experian on August 11, 2023 stating that Experian could not correct my file because my dispute letter did not "indicate the specific item" I was disputing. This was not true. My dispute letter stated, "my brother's auto loan with Hyundai Capital is now appearing on my Experian credit file. Please remove Hyundai

10

> Finance Account Number 20230604877588 from my Experian credit file, as well as any other information that is associated with my brother's ssn."
>
> I am again asking that Experian remove my brother's Hyundai Capital account (Account Number [xxxxxx…]) from my credit file, and that Experian completely and permanently remove my brother's accounts and other information from my credit file.

64.     Plaintiff sent her dispute via certified mail.

65.     Defendant received Plaintiff's dispute on August 26, 2023.

66.     Defendant never responded to Plaintiff's dispute.

67.     For a second time, Defendant refused to reinvestigate Plaintiff's dispute, and refused to remove her brother's information from her credit file.

## CLASS ACTION ALLEGATIONS

68.     The FCRA Class. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows (the "Class"):

> All natural persons residing in the United States who (1) were the subject of a consumer report prepared by Experian within two years prior to the filing of this lawsuit (2) made a written dispute and provided their name, address and a copy of a government issued identification in making a dispute, (3) but where Experian did not complete the dispute investigation within 30 days or send the dispute to the furnisher within 5 days of receiving the dispute because it requested further identifying information.

69.     **Numerosity.** The Class members are so numerous that joinder of all is impractical. Class members are geographically disbursed across the United States, further hampering joinder. Because Defendant's letter to Plaintiff is a form letter, discovery will show that it is substantially similar to those that Defendant sent to other consumers. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

11

70. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had a right to request consumers' full Social Security numbers or other identifying information before processing their disputes; (b) whether Defendant actually required a Social Security number or more identifying information in order to locate the consumers' files; (c) whether Defendant failed to conduct a reinvestigation of consumers' disputes; (d) whether Defendant failed to provide notice of consumers' disputes to the furnishers of the disputed information; and (e) whether Defendant acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

71. **Typicality.** Plaintiff's claims are typical of the claims of each Class member and all are based on the same facts and legal theories. Discovery will show Defendant sent the same or substantially the same standardized letters to consumers across all states located within the United States during the full class period. For purposes of class certification only, Plaintiff seeks statutory and punitive damages. Plaintiff would seek individual or actual damages only if class certification is denied. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Class.

72. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

73. Certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

   a. As alleged above, the questions of law or fact common to the members of the Class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

   b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involved may, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers for whom Defendant refused to process disputes in violation of the requirements of the FCRA are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

**CLAIMS FOR RELIEF**

**COUNT 1 – Violation of Section 1681i(a)(1) of the FCRA -** *Delay*
**Class Claim Against Defendant**

74. Plaintiff restates each of the allegations in the proceeding paragraphs as if fully set forth at length herein.

75. Defendant violated as to the Plaintiff and the Class 15 U.S.C. § 1681i(a)(1)(A)'s requirements that a CRA complete a dispute investigation "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer[.]"

76. Defendant violated as to the Plaintiff and the Class 15 U.S.C. § 1681i(a)(2)'s requirements that a CRA forward the dispute and all other relevant information to the furnisher within 5 days of receiving the dispute.

77. As a result of this conduct, the Plaintiff and each Class member suffered a delay in the processing of their dispute.

78. Plaintiff and each Class member suffered actual harm in the form of credit injury, mailing and paper expense, and time lost as a result of Defendant's refusal to investigate their disputes within the time required, for which Plaintiff and each Class member are entitled to recover pursuant to 15 U.S.C. §§ 1681n and 1681o.

79. Plaintiff and each Class member suffered actual economic harm in the form of additional postage, loss of time spent processing subsequent disputes, and costs of copies.

80. Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

81. The Plaintiff and the putative Class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n.

**COUNT 2 – Violation of Section 1681i(a)(2) of the FCRA - *Delay***
**Class Claim Against Defendant**

82. Plaintiff restates each of the allegations in the proceeding paragraphs as if fully set forth at length herein.

83.     Defendant violated as to the Plaintiff and the Class 15 U.S.C. § 1681i(a)(2)'s requirements that a CRA forward the dispute and all other relevant information to the furnisher within 5 days of receiving the dispute.

84.     As a result of this conduct, the Plaintiff and each Class member suffered a delay in the processing of their dispute.

85.     Plaintiff and each Class member suffered actual harm in the form of credit injury, mailing and paper expense, and time lost as a result of Defendant's refusal to investigate their disputes within the time required, for which Plaintiff and the Class members are entitled to recover pursuant to 15 U.S.C. §§ 1681n and 1681o.

86.     Plaintiff and each Class member suffered actual economic harm in the form of additional postage, loss of time spent processing subsequent disputes, and costs of copies.

87.     Experian's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

88.     The Plaintiff and the putative Class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n.

**COUNT 3 – Violation of Section 1681e(b) of the FCRA**
**Individual Claim Against Defendant**

89.     Plaintiff restates each of the allegations in the proceeding paragraphs as if fully set forth at length herein.

90.     Defendant willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files it published and maintained concerning Plaintiff.

15

91. Further, after Plaintiff's detailed disputes put Defendant on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, Defendant ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

92. Defendant furnished consumer reports to third parties containing the inaccurate tradeline information and it did so after receiving notice of these inaccuracies.

93. Defendant's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94. As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative her statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

95. Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

96. Defendant negligently failed to comply with the requirements of the FCRA.

97. As a result of Defendant's failures to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities, for which Plaintiff seeks damages in an amount to be determined by the jury.

98. Plaintiff is entitled to recover costs and attorneys' fees from the Defendant, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the putative Class members, moves for class certification and for statutory, and punitive damages against Defendant on a class basis; for actual damages, statutory damages and punitive damages as well on an individual basis; for attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: April 10, 2024

Respectfully submitted,

**OPE ADENIKINJU**

By: ___/s/ Leonard A. Bennett___
Leonard A. Bennett
Craig C. Marchiando
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660
(757) 930-3662 fax
craig@clalegal.com

Jeffrey B. Sand (*pro hac vice forthcoming*)
WEINER & SAND LLC
800 Battery Avenue SE
Atlanta, Georgia 30339
(404) 254-0842 (Tel.)
(404) 205-5029 (Tel.)
(866) 800-1482 (Fax)
Email: aw@wsjustice.com
Email: js@wsjustice.com

*Attorneys for Plaintiff*